## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 38103

| | | |
|---|---|---|
| **MICHAEL CRAIG GRAVES,** | ) | **2011 Unpublished Opinion No. 737** |
| | ) | |
| **Petitioner/Respondent/** | ) | **Filed: December 7, 2011** |
| **Cross-Appellant,** | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| **v.** | ) | |
| | ) | **THIS IS AN UNPUBLISHED** |
| **STATE OF IDAHO, DEPARTMENT OF** | ) | **OPINION AND SHALL NOT** |
| **TRANSPORTATION,** | ) | **BE CITED AS AUTHORITY** |
| | ) | |
| **Respondent/Appellant/** | ) | |
| **Cross-Respondent.** | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Gooding County. Hon. John K. Butler, District Judge.

Order reversing hearing officer's decision to uphold suspension of driving privileges, <u>reversed</u>; order denying motion to admit additional evidence, <u>affirmed</u>.

Hon. Lawrence G. Wasden, Attorney General; Timothy J. Stover, Special Deputy Attorney General, Twin Falls, for appellant/cross-respondent. Timothy J. Stover argued.

Brown & James, Gooding, for respondent/cross-appellant. Philip A. Brown argued.

_____

GRATTON, Chief Judge

The State appeals from the district court's order reversing the hearing officer's decision to uphold the suspension of Michael Craig Graves' driving privileges. The district court held that the hearing officer's decision was not supported by substantial and competent evidence. Graves cross-appeals from the district court's order denying his motion to admit additional evidence.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 14, 2009, at approximately 12:55 a.m., Deputy Kelby Cornett was dispatched to a one-vehicle accident. When Deputy Cornett arrived at the accident he was told

by a Hagerman police officer that the driver appeared to be intoxicated. The driver was identified by an Idaho driver's license as Graves.

Graves told Deputy Cornett he was traveling at fifty miles-per-hour when he hit a patch of ice, which caused him to drive off the road. Deputy Cornett detected the odor of alcohol on Graves' breath and observed that Graves had slurred speech, impaired memory, and bloodshot eyes. According to Deputy Cornett's affidavit, Graves told him that he had consumed three beers. Deputy Cornett inventoried Graves' vehicle and found two empty beer cans and one nearly-empty beer can behind the passenger seat. Graves was arrested for driving under the influence of alcohol pursuant to Idaho Code § 18-8004. Graves' blood test results indicated a blood alcohol content of .224g/100cc blood.

Graves was served with a notice of administrative license suspension. Graves timely filed a request for an administrative hearing and a telephonic hearing was conducted. Graves testified at the administrative hearing that he consumed eleven beers after the accident and threw most of the empty cans in the back of his truck. Graves also testified that he had not been drinking prior to the accident, he was sleeping in the backseat when the Deputy Cornett arrived, and was not in physical control of the vehicle. The hearing officer held that Deputy Cornett possessed legal cause to believe Graves was driving under the influence of alcohol and upheld the suspension of Graves' driving privileges.

Graves timely filed a petition for review to the district court and his suspension was stayed pending the district court's review. The district court determined that the hearing officer's decision was not supported by substantial and competent evidence and reversed Graves' license suspension. The district court also denied Graves' motion to admit additional evidence. The State timely appealed the district court's suspension decision and Graves cross-appealed the denial of his motion to admit additional evidence.

## II.

## DISCUSSION

### A. Motion for Leave to Present Additional Evidence

Graves filed a motion in the district court to present additional evidence. Graves sought to admit additional evidence of a DVD of the arrest and Deputy Cornett's testimony from a criminal proceeding conducted after the administrative hearing. Graves contended that the DVD showed the actual interaction between Deputy Cornett and Graves, contained information not

2

included in the affidavit of probable cause, and contradicted the affidavit as to the administration of a third field sobriety test. Graves asserted that Deputy Cornett's testimony from the criminal trial corroborated the time of dispatch as 12:15 a.m., not 12:55 a.m. Graves also contended that Deputy Cornett's testimony at the criminal trial, contrary to the affidavit, was that he did not offer a third field sobriety test and Graves did not state that "he did not want to do the test, he was going to jail." Finally, Graves noted at the criminal trial that Deputy Cornett testified he left out of the affidavit the fact that Graves had told him his last drink was fifteen minutes before an officer arrived on the scene.

By statute, "judicial review of disputed issues of fact must be confined to the agency record for judicial review as defined in this chapter [I.C. § 67-5275(1)], supplemented by additional evidence taken pursuant to section 67-5276, Idaho Code." I.C. § 67-5277. Idaho Code § 67-5276 allows additional evidence when it is shown to the satisfaction of the court that there were good reasons for failure to present the evidence at the agency hearing, or that there were alleged irregularities in the procedure before the agency. Thus, generally, judicial review is confined to the agency record unless the party requesting the additional evidence complies with one of the two statutory exceptions in I.C. § 67-5276. *Petersen v. Franklin County*, 130 Idaho 176, 185, 938 P.2d 1214, 1223 (1997). Graves did not allege any irregularities before the agency; therefore, Graves is confined to show good reason for failing to present the evidence.

We review a district court's decision to admit additional evidence pursuant to I.C. § 67-5276 under an abuse of discretion standard. *In re Application for Zoning Change*, 140 Idaho 512, 515-516, 96 P.3d 613, 616-617 (2004). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

In an effort to demonstrate good cause, Graves argued that the DVD was not supplied to him prior to the administrative hearing. He further argued that the testimony of Deputy Cornett was unavailable because the criminal trial occurred after the administrative hearing.

The district court took judicial notice of information in the criminal proceeding regarding information provided by the State to Graves through discovery. The court noted that the

existence of the DVD was disclosed in discovery responses well before the administrative hearing. The court also noted that later discovery indicated production of the DVD, along with information which Graves, in fact, submitted at the administrative hearing. Graves contends that the district court improperly took judicial notice of the information in the criminal file because the court did not specifically identify the documents to be judicially noticed as required by Idaho Rule of Evidence 201. This argument is without merit as the court clearly identified, by date, the discovery responses to which it was referring. Graves further contends that the district court improperly took judicial notice of the criminal file because the matter was disputed and that he had been provided an inadequate opportunity to contest the court's decision. Graves advised the court that his counsel had not reviewed the DVD until after the administrative hearing. Thus, he claims that the actual production of the DVD was disputed, despite the representations in the discovery responses. However, the principal issue was the disclosure and availability of the DVD. Graves was aware of a DVD, whether he took steps to secure it prior to the administrative hearing or not. Additionally, Graves was given the opportunity to articulate to the court why the DVD had not been obtained, viewed, or submitted prior to the administrative hearing, but failed to do so.

The district court held that Graves could have subpoenaed Deputy Cornett to the administrative hearing, but chose not to do so. Instead, Graves chose to rely on his own testimony. Graves could have examined Deputy Cornett at the administrative hearing regarding his affidavit. The district court did not abuse its discretion in denying Graves' motion to admit additional evidence.

**B.     Hearing Officer's Decision**

The Idaho Administrative Procedures Act 2009 (IDAPA) governs the review of ITD decisions to deny, cancel, suspend, disqualify, revoke, or restrict a person's driver's license. *See* I.C. §§ 49-201, 49-330, 67-5201(2), 67-5270. In an appeal from the decision of the district court acting in its appellate capacity under IDAPA, this Court reviews the agency record independently of the district court's decision. *Marshall v. Dep't of Transp.,* 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. This Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.,* 130 Idaho 923, 926, 950 P.2d 1262, 1265

4

(1998); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial and competent evidence in the record. *Urrutia v. Blaine County,* 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall,* 137 Idaho at 340, 48 P.3d at 669.

The Court may overturn an agency's decision where its findings, inferences, conclusions, or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The party challenging the agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67-5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. If the agency's decision is not affirmed on appeal, "it shall be set aside . . . and remanded for further proceedings as necessary." I.C. § 67-5279(3). Substantial and competent evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," even if the evidence is conflicting. *Folks v. Moscow School Dist. No. 281*, 129 Idaho 833, 836, 933 P.2d 642, 645 (1997).

The administrative license suspension statute, I.C. § 18-8002A, requires that ITD suspend the driver's license of a driver who has failed a BAC test administered by a law enforcement officer. The period of suspension is ninety days for a driver's first failure of an evidentiary test and one year for any subsequent test failure within five years. I.C. § 18-8002A(4)(a). A person who has been notified of such an administrative license suspension may request a hearing before a hearing officer designated by ITD to contest the suspension. I.C. § 18-8002A(7). At the administrative hearing, the burden of proof rests upon the driver to prove any of the grounds to vacate the suspension. I.C. § 18-8002A(7); *Kane v. State, Dep't of Transp.*, 139 Idaho 586, 590, 83 P.3d 130, 134 (Ct. App. 2003). The hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown one of several grounds enumerated in I.C. § 18-8002A(7) for vacating the suspension. Those grounds include:

> (a)    The peace officer did not have legal cause to stop the person; or
> (b)    The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code; or

5

> (c)     The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
>
> (d)     The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered; or
>
> (e)     The person was not informed of the consequences of submitting to evidentiary testing as required in subsection (2) of this section.

I.C. § 18-8002A(7). The hearing officer's decision is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8); *Kane*, 139 Idaho at 589, 83 P.3d at 133.

The hearing officer determined that Deputy Cornett had legal cause to believe that Graves had been driving or was in actual physical control of his vehicle while under the influence of alcohol. Graves admitted to having been the driver at the time of the accident. On intermediate appeal, the district court determined that the hearing officer's decision was not supported by substantial evidence. More specifically, the district court stated:

> There is no dispute that the petitioner was, at one point in time, driving or in actual physical control of the vehicle. There is also no dispute that the petitioner was intoxicated when the police arrived. The issue before this Court is whether there was substantial evidence in the record for the Hearing Officer to conclude that the petitioner was intoxicated while operating the vehicle. . . .

The district court concluded that "there was no substantial or competent evidence in the record that supported the conclusion that the petitioner was intoxicated or under the influence while operating the vehicle, prior to this accident."

The State first claims that the district court erred when it overturned the hearing officer's decision because the district court incorrectly required proof that Graves was operating the motor vehicle while under the influence of alcohol. The State asserts that the suspension issue is actually only whether the officer had legal cause to believe that Graves had been driving or was in actual physical control of the vehicle while intoxicated. *See* I.C. § 18-8002A(7)(b). The State contends that the officer's legal cause to believe is a different, and lower, standard than proof that Graves was, in fact, operating the vehicle while intoxicated. However, the district court identified the claim on appeal and the issue presented as whether the officer had legal cause to believe that Graves had been driving under the influence. Additionally, in the "conclusion" paragraph of the district court's decision, the district court stated that "the decision of the hearing

6

officer was not supported by substantial and competent evidence, as the peace officer did not have legal cause to believe defendant had been driving or was in control of the vehicle while under the influence of alcohol . . . ." We, therefore, cannot conclude that the district court erred in this regard.

As an initial matter, Idaho appellate courts have not yet decided whether the "legal cause" to request evidentiary testing referenced in I.C. § 18-8002(4)(b) is equated to probable cause for an arrest or reasonable suspicion.[1] *In re Suspension of Driver's License of Gibbar*, 143 Idaho 937, 155 P.3d 1176 (Ct. App. 2006). In *Gibbar*, this Court stated that it need not reach the issue as the facts demonstrated probable cause, the higher standard. The *Gibbar* Court, however, described the probable cause and reasonable suspicion standards.

> Probable cause for an arrest exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the suspect has committed or is committing an offense. When assessing a police officer's determination of probable cause in the field, a court must take into consideration the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. In determining whether there is probable cause for an arrest, an officer is entitled to draw reasonable inferences from the available information in light of the knowledge gained from his or her previous experience and training.

*Id*. at 943, 155 P.3d at 1182 (citations omitted).

> The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. Suspicion will not be found to be justified if the conduct observed by the officer fell within the broad range of what can be described as normal driving behavior.

*Id*. at 943, 155 P.3d at 1182 (citations omitted). Reasonableness of the suspicion must be based upon the totality of the circumstances. *Id*. at 942-943, 155 P.3d at 1181-1182. The State argues that the Court should adopt the reasonable suspicion standard. However, in any event, the State

---

[1] We note, however, that this Court in *State v. Ferreira,* 133 Idaho 474, 480-482, 988 P.2d 700, 706-708 (Ct. App. 1999), held that the Fourth Amendment to the United States Constitution, as well as Article I, Section 17 of the Idaho Constitution, only require reasonable suspicion of operation of a vehicle in violation of I.C. § 18-8004 before field sobriety tests may be administered.

contends that this Court, as in *Gibbar*, need not reach the question since the facts here demonstrate that Deputy Cornett possessed probable cause, the higher standard.

The burden is on Graves to demonstrate that the officer lacked legal cause to believe he was driving while under the influence of alcohol. *See id*. at 944, 155 P.3d at 1183. Graves argues at length that the hearing officer improperly stated that Deputy Cornett had legal cause for the stop, noting that there was no stop made by Deputy Cornett. Additionally, Graves, as well as the district court, spent considerable time discussing the question of whether Graves was in "actual physical control" of the vehicle, noting that Deputy Cornett never personally saw Graves in the driver's seat or in control of the vehicle. Graves admitted that he was in control of the vehicle at the time of the accident. It is undisputed that the accident rendered the vehicle inoperable. Therefore, the ultimate question is whether the evidence supports a determination that Deputy Cornett had legal cause to believe that Graves was under the influence of alcohol at the time of the accident.

In *Gibbar*, the Court analyzed the facts under the legal cause determination:

> Gibbar concedes that the record establishes that Gibbar was weaving, that the officer smelled alcohol inside Gibbar's vehicle and on his person, that Gibbar admitted to drinking two beers after initially denying any consumption of alcohol, and that Gibbar's eyes were bloodshot. Despite this evidence, Gibbar argues that the officer did not have legal cause to believe that Gibbar was driving while under the influence of alcohol because the officer failed to follow the proper procedures for conducting the field sobriety tests. Gibbar also argues that the officer had facts available to him dispelling the evidence of intoxication. Gibbar relies on his statements to the officer that he had been baling and loading hay in the 100-degree heat to explain his appearance, that he may have had trouble with the front-end of his pickup to explain the weaving, and that he crossed the center line to avoid a pedestrian. We conclude that the officer had legal cause when Gibbar weaved in and out of his lane, admitted to drinking alcohol, smelled of alcohol, and had bloodshot eyes. Gibbar's allegations that the field sobriety tests were conducted improperly and his alternative explanations for his appearance and driving do not overcome the evidence possessed by the officer that Gibbar was under the influence of alcohol. Therefore, the hearing officer properly concluded that Gibbar did not meet his burden of proving that the officer lacked legal cause to believe Gibbar was driving while under the influence of alcohol.

*Id*. at 943-944, 155 P.3d at 1182-1183.

In *Gibbar*, this Court concluded that the officer had legal cause "when Gibbar weaved in and out of his lane, admitted to drinking alcohol, smelled of alcohol, and had bloodshot eyes." Similarly, in the present case, Graves was involved in an accident, admitted to drinking alcohol,

smelled of alcohol, and had bloodshot eyes. In *Gibbar*, this Court concluded that Gibbar's assertion that facts available to the officer of alternative reasons for his appearance and driving dispelled evidence of intoxication, and did not overcome the evidence possessed by the officer that Gibbar was under the influence of alcohol. In the present case, Graves does not attempt to explain away the evidence that he was under the influence of alcohol, but only that his intoxication occurred after he was no longer in control of the vehicle.

This Court considered a petitioner's claim of post-accident drinking in *In re Mahurin*, 140 Idaho 656, 99 P.3d 125 (Ct. App. 2004):

> Mahurin contends that he showed, through his own testimony and corroborating unsworn written statements from other witnesses, that he ingested alcohol after the motorcycle accident, and therefore the breath test did not show that he was intoxicated while operating the motorcycle. This evidence, Mahurin asserts, required the hearing officer to vacate the license suspension pursuant to I.C. § 18-8002A(7)(c)[2] on the ground that "[t]he test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code." Mahurin argues that the hearing officer unjustifiably disregarded Mahurin's evidence on this point.
>
> The evidence before the hearing officer included a notation in Officer Campbell's police report describing his conversation with Mahurin after the breath test was administered. According to the police report, Mahurin at that time told the officer that he had been at a bar prior to the accident. Mahurin was asked when he took his last drink, and he responded that it was around the time that the bar closed. According to the police report, the officer further asked Mahurin if he drank anything after he wrecked the motorcycle, and Mahurin replied that he had not drunk anything after leaving the bar. This evidence was in direct conflict with Mahurin's testimony and his witnesses' statements, thus presenting a credibility issue for resolution by the hearing officer. The hearing officer found the information in the police report to be more credible, stating that Mahurin's testimony and witnesses' statements "do not outweigh Mahurin's voluntary statement that he made to Officer Campbell on the night of his arrest."

*Id*. at 661, 99 P.3d at 130.

Graves contends that he demonstrated, through the evidence presented at the administrative hearing, that he ingested alcohol only after the accident and therefore the evidence

---

[2]      Note that in *Mahurin*, the petitioner claimed that the evidence of post-accident drinking undermined the test results, I.C. § 18-8002A(7)(c), whereas, in this case, the claim is that the evidence of post-accident drinking undermined the legal cause determination, I.C. § 18-8002A(7)(b).

does not show that Graves had been driving his vehicle while under the influence of alcohol. This evidence, Graves asserts, required the hearing officer to vacate the license suspension pursuant to I.C. § 18-8002A(7)(b) on the ground that "the officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code." Graves argues that the hearing officer unjustifiably disregarded Graves' evidence on this point. On the other hand, the State argues that the district court reweighed the evidence relied upon by the hearing officer and disregarded the hearing officer's credibility determinations.

Graves relies on his testimony given during the administrative hearing. Graves testified that he purchased two sixteen-ounce six-packs of beer. He stated that he had nothing to drink before the accident, which occurred at about 10:00 p.m. Graves testified that after surveying the damage to the vehicle, he began drinking the beer. He claimed that after nearly two hours he took the last three beers and climbed into the rear of the cab of the truck. He drank two of the beers and started on the third and these cans were left in the cab.[3] Graves stated that he had placed the remaining empty beer cans in the bed of the truck. Graves testified that his phone did not operate in the area. He also testified that as he drank the beer he got in and out of the truck, that the truck was not operable, and that he had placed the keys in the bed of the truck. He further stated that he did not want to leave the truck because he had guns in it and that, at the time the officer arrived, he did not believe anyone would show up and had decided to sleep in the back of the truck.

Graves points to a sheriff's office document, submitted as an exhibit, which reflects that third parties contacted the sheriff's office and reported, just after midnight, that a vehicle had gone off the road two hours previous and that the interior light kept going on and off. He contends that this corroborates his testimony that the accident happened around 10:00 p.m. and that he got in and out of the vehicle as he drank the beer. He further points out that the officer arrived some time thereafter and, thus, nearly three hours passed between the time of the

---

[3]  Graves testified: "I had all and then I had a partial of a--well, I had like six, seven, eight, nine--elev--yeah, eleven of the sixteen-ouncers, and then I had the one left that I hadn't finished drinking."

10

accident and his encounter with Deputy Cornett, time in which he drank the beer. In addition, Graves asserts that Deputy Cornett made no mention of looking in the bed of the truck, where he would have located the remaining nine empty beer cans. He contends further that he was in the back of the truck when the officer arrived and the officer's affidavit fails to mention his location in the vehicle.

The hearing officer determined that Graves' assertion that he drank eleven beers was in conflict with Deputy Cornett's notation that Graves admitted to drinking three beers. The hearing officer also determined that Graves' claim that he threw eleven empty beer cans in the bed of his truck was inconsistent with Deputy Cornett locating three beer cans behind the passenger seat and making no mention of any beer cans in the bed of the truck.[4] Graves contended that these last beers were the three located by Deputy Cornett. The hearing officer found that Graves' claim of drinking the beer after the crash and his unsubstantiated and uncorroborated claim of throwing empty beer cans in the bed of the truck were not credible and of insignificant evidentiary value. The hearing officer stated that:

> This hearing officer doubts and questions the accuracy and honesty of Graves' testimony based on the inconsistency between the sworn statement and the testimony, the lack of facts set forth in the sworn statement supporting Graves' testimony, and changing of facts from the incident date to the hearing date.

In addition, the hearing officer stated that since Graves' BAC was nearly three times the legal limit "he certainly cannot have a clear memory two months later when testifying at the Administrative License Suspension hearing."

In relevant part, the district court held as follows:

> The affidavit contains no mention of the placement of defendant's keys, the location of the defendant in the car, or whether the beers admitted to having been consumed were before or after the accident. While it is true that there was a discrepancy between what the petitioner told Deputy Cornet and his testimony as to the number of beers he consumed, there is nothing in the affidavit of probable cause as to the [sic] when the beers were consumed. The only issue of credibility as to the testimony of the petitioner was in regards to the number of beers

---

[4]      It should be noted here that the hearing officer partially misinterpreted Graves' testimony as he stated that all of the cans of beer he claims to have drunk were deposited in the bed of the truck, except for the "last couple beers," the "last ones," which he took into the truck and which he "didn't even mess with setting those cans back out." Thus, according to Graves, he would have thrown nine out of the twelve beers into the bed of the truck, leaving the last three with him in the cab.

11

consumed, which would only be relevant to the level of intoxication and not as to when the beers were consumed.

Thus, the district court limited the hearing officer's determination of credibility to the number of beers consumed.

In *Mahurin*, this Court stated:

Upon judicial review of an administrative hearing officer's order, a court may not set aside findings unless those findings are "not supported by substantial evidence on the record as a whole." I.C. § 67-5279(3)(d). The court may not substitute its judgment for that of the hearing officer as to the weight of evidence or credibility determinations. I.C. § 67-5279(1); *Suits v. Idaho Bd. of Prof. Discipline,* 138 Idaho 397, 399, 64 P.3d 323, 325 (2003); *Morgan v. Idaho Dep't of Health & Welfare,* 120 Idaho 6, 8, 813 P.2d 345, 347 (1991). Mahurin's evidence of post-accident drinking was specifically considered by the hearing officer but was rejected as lacking credibility. This credibility determination is supported by substantial evidence in the record and will not be disturbed by this Court.

*Mahurin*, 140 Idaho at 661, 99 P.3d at 130. The State contends that because of the discrepancy in the number of beers consumed, as well as the lack of information in the sworn statement corroborating Graves' testimony, the hearing officer's credibility determination went beyond merely the number of beers, but also included the entire claim of drinking all of the beers after the accident. The State argues that the district court was not free to limit or substitute its view of credibility for that of the hearing officer. The State asserts that the hearing officer rejected Graves' claim of only drinking after the accident as lacking credibility and that this credibility determination is supported by substantial evidence in the record and should not be disturbed.

We agree with the State that the hearing officer's credibility determination included Graves' testimony of drinking all of the beers *after* the accident, not just the number of beers. In this regard, the district court incorrectly narrowed the scope of the credibility determination. The hearing officer gave three reasons as to why he did not believe Graves' testimony: (1) inconsistencies between the sworn statement and the testimony at the hearing; (2) the lack of facts set forth in the sworn statement supporting Graves' testimony; and (3) the changing of facts from the incident date to the hearing date. The hearing officer specifically pointed out that Graves told Cornett that he had three beers and then told the hearing officer that he had eleven or twelve beers. The hearing officer also noted the lack of facts in the sworn statement that could corroborate Graves' later testimony of only drinking after the accident. Graves does not contend

12

that he told the officer that he drank twelve, instead of three, beers. Graves does not contend that he told the officer to look into the bed of the truck where he would find nine empty beer cans. Graves does not contend that he told the officer that he had only been drinking after the accident, even though he was being arrested for driving under the influence of alcohol. This is not to say that the hearing officer relied entirely on the sworn statement, but expected at least some of Graves' testimony to be corroborated by the sworn statement. The sworn statement, however, does not corroborate Graves' testimony; this could be because the officer left details out or because Graves changed his story. Either way, the hearing officer took the information from the sworn statement and Graves' testimony and concluded that Graves was not credible, not just to the number of beers, but also that he only drank after the accident. This credibility determination is supported by substantial evidence in the record and will not be disturbed by this Court.[5]

It is clear that Deputy Cornett had legal cause to believe that Graves was under the influence of alcohol at the time of arrest. As noted above, in *Gibbar* this Court found legal cause to request an evidentiary hearing when Gibbar was weaving, the officer smelled alcohol inside the vehicle and on Gibbar, Gibbar admitted to drinking two beers, and Gibbar's eyes were bloodshot. The evidence before the hearing officer in the present case establishes that Graves had been operating his vehicle when he was involved in a one-vehicle accident. The evidence further shows that Graves had bloodshot eyes, slurred speech, and smelled of a strong alcohol odor at the time Deputy Cornett arrived. Graves also failed one or more field sobriety tests. Indeed, Graves admits that he was intoxicated at the time of his encounter with Deputy Cornett.

However, the additional question here is whether Deputy Cornett had legal cause to believe that Graves was under the influence of alcohol at the time of the accident. It is Graves' burden to prove, by a preponderance of the evidence, that the officer did not have legal cause. Despite the substantial evidence of intoxication, Graves argues that the officer did not have legal cause to believe that he had been driving while under the influence of alcohol because of the length of time between the accident and his encounter with Officer Cornett, and his testimony to

---

[5]     In *Mahurin*, the testimony from the driver was in direct conflict with what he had previously told the officer. However, in this case, the hearing officer was entitled to assess Graves' credibility not only in regard to the inconsistency and changed facts relative to the number of beers consumed, but also in regard to the other factual claims which Graves either did not tell the officer or were not recorded by the officer.

consuming all of the alcohol during that time. While the over two hours of time between the accident and Graves' encounter with Officer Cornett established the opportunity to drink substantial amounts of alcohol after the accident, it by itself, establishes only an opportunity. Graves' testimony of drinking twelve beers is directly contrary to what he told Officer Cornett. This inconsistency, together with the lack of corroboration from the sworn statement of the officer--e.g., that Graves ever told the officer he consumed more than three beers, that he only drank after the accident, or that nine empty beer cans could be found in the bed of the truck-- entitled the hearing officer to find that Graves failed in his burden of proof. Graves was intoxicated at the time of his arrest. Graves' evidence of post-accident drinking was specifically considered by the hearing officer, but was rejected as lacking credibility. This credibility determination is supported by substantial evidence in the record. Therefore, the hearing officer properly concluded that Graves did not meet his burden of proving that the officer lacked legal cause to believe Graves had been driving while under the influence of alcohol.

## III.

## CONCLUSION

Graves has failed to demonstrate that the district court abused its discretion in denying his motion to admit additional evidence. Graves has not shown that the officer lacked legal cause to believe he had been driving while under the influence of alcohol. We affirm the district court's denial of Graves' motion to admit additional evidence. However, we reverse the district court's decision which reversed the hearing officer's decision to uphold the suspension of Graves' driving privileges. Accordingly, the hearing officer's decision to uphold Graves' license suspension is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**

14